# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-248V**

NATHAN MOSTOW,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: July 7, 2025

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA, for Petitioner.*

*Nina Ren, U.S. Department of Justice, Washington, DC, for Respondent.*

## FACT RULING DISMISSING TABLE CLAIM[1]

On January 7, 2021, Nathan Mostow filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a shoulder injury related to vaccine administration ("SIRVA") – a Table injury – as a result of an influenza ("flu") vaccine administered to him on January 4, 2020.[3] Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons set forth below, I find it more likely than not that the onset of Petitioner's injury did not occur within 48 hours of vaccination. Petitioner's Table claim is

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] Petitioner alternatively alleges that his subject flu vaccination was the cause-in-fact of his SIRVA. Am. Pet. at 1, ECF No. 12.

therefore **DISMISSED** (although the matter may remain viable as a causation-in-fact claim).

## I. Relevant Procedural History

Upon Respondent's medical review of the instant claim, the parties made a tentative effort to settle the case but were ultimately unsuccessful. *See* ECF Nos. 30-34. Respondent thereafter filed his Rule 4(c) Report defending this case in July 2023, arguing that the filed record does not support a showing of 48-hour onset. ECF No. 36 at 7 (internal citations omitted). I thereafter issued an Order to Show Cause, highlighting the specific deficiencies in the record related to Petitioner's ability to establish Table-consistent onset. ECF No. 37.

In response (and following one extension of time (ECF No. 38)), Petitioner submitted two supplemental declarations – one authored by his wife, and the other from Petitioner himself. ECF No. 39. He also submitted a written brief, arguing that he can establish a Table SIRVA claim. ECF No. 40. Respondent subsequently filed his response maintaining his argument that the evidence does not support Table onset. ECF No. 41. Petitioner filed his reply in June 2024. ECF No. 42. This matter is now ripe for consideration.

## II. Relevant Medical Evidence

I have reviewed all of the medical records and evidence filed to date. Only such information related to onset will be discussed herein.

Respondent does not dispute that Petitioner's medical history is noncontributory, and that he "was not being seen by a health care provider for left shoulder concerns" around the time of vaccination.[4] ECF No. 41 at 2 (citing Ex. 11 at 11-12; Ex. 26 at 7-8). However, Respondent highlights that Petitioner was using an upper body ergometer ("UBE") – a device "designed to train or rehabilitate the upper body" - both pre and post vaccination. *Id.* (citing Ex. 26 at 7-8; Ex. A (defining an UBE)).

At age 73, Petitioner received the flu vaccine alleged as causal on January 4, 2020. Ex. 2 at 2. Petitioner's first post-vaccination visit for left shoulder pain occurred on January 17, 2020 (13 days post vaccination), with an orthopedist (Dr. Bottiglieri). Ex. 4 at 10. Dr. Bottiglieri noted that Petitioner's left shoulder "[p]ain began INSIDIOUSLY week [sic] ago."

[4] For instance, Petitioner had a December 26, 2019 cardiology visit and did not mention left shoulder complaints; and during a December 30, 2019 annual PCP visit, he likewise did not complain of left shoulder symptoms. Ex. 11 at 11-12; Ex. 26 at 7-8.

*Id.* (emphasis in original). Petitioner "state[d] that the only thing that he feels may have provoked [the] pain would be using the UBE. He denie[d] trauma/injury." *Id.* Petitioner underwent an x-ray during this visit (which showed glenohumeral osteoarthritis), with the reason being listed as "left shoulder pain for 3 weeks with decreased range of motion [("ROM")]" – which would have been since December 27, 2019 (meaning *prior* to vaccination). *Id.* at 14. Petitioner did not attribute the pain to his vaccination at this time.

On January 27, 2020, Petitioner presented for an initial physical therapy ("PT") evaluation. Ex. 5 at 105. On the intake form, Petitioner wrote that his pain began a "month ago" (meaning around December 27, 2019) – but he did not describe the date of onset with any more particularity. *Id.* Petitioner was asked to document how the injury occurred, to which he handwrote "unknown." *Id.* The visit notes at the time of Petitioner's discharge from PT on February 24, 2020, list the date of onset of his injury as "12/28/2019[,]" and state that he had "not responded to therapy as his rotator cuff is clinically torn." *Id.* at 188.

Between February 14 and August 19, 2020, Petitioner had several follow-up visits for left shoulder symptoms – a majority with his orthopedist, Dr. Bottiglieri. *See,* e.g., Ex. 4 at 85 (a February 14, 2020 orthopedic visit, concluding with an assessment of rotator cuff tendinitis, impingement, subacromial subdeltoid bursitis, and reactive biceps tendinitis); Ex. 4 at 82 (an April 2, 2020 orthopedic telehealth visit with an assessment including chronic rotator cuff tendinopathy/arthropathy); Ex. 11 at 9-10 (a June 2, 2020 cardiology visit); Ex. 4 at 79 (a June 12, 2020 orthopedic visit with an assessment including adhesive capsulitis secondary to chronic rotator cuff tendinosis); Ex. 4 at 78 (a June 24, 2020 telehealth orthopedic visit); Ex. 6 at 5 (a July 6, 2020 visit with a hand surgeon); Ex. 4 at 77 (a July 17, 2020 orthopedic visit); Ex. 4 at 69 (an August 19, 2020 telehealth orthopedic visit). Petitioner did not mention the date of onset or attribute his pain to the subject flu vaccination at *any* of these visits.

Notably, during a September 16, 2020 initial evaluation with an orthopedic surgeon, Petitioner complained of "chronic left shoulder pain," noting his ongoing pain at night. Ex. 4 at 65. He did not link his pain to the subject vaccination at this time, however, or otherwise describe the duration or onset of his pain. *See id.* The assessment included left shoulder rotator cuff tendinosis and mild arthritis. *Id.* Petitioner attended regular follow-up orthopedic visits with Dr. Bottiglieri through December 2020 – still without linking his pain to the flu vaccine. *See,* e.g., *id.* at 54, 64; Ex. 7 at 5-6; Ex. 24 at 12-13.

A year after vaccination, on January 6, 2021 (*one day before the filing of this claim*), Petitioner saw his primary care provider ("PCP") for an annual visit and now complained of left shoulder pain after receiving a flu shot "in Jan[uary]." Ex. 26 at 10. Petitioner described "pain at shot site." *Id.* The visit note does not contain a date of onset.

After initiating his claim, and during a July 23, 2021 orthopedic follow-up visit with Dr. Bottiglieri, Petitioner "reviewed with [Dr. Bottiglieri] today as [sic] history of SIRVA after flu vaccine." Ex. 32 at 16. After assessing Petitioner with "SIRVA left shoulder," rotator cuff tendinitis-chronic, cervical spondylosis, and subscapular bursitis, under "plan" Dr. Bottiglieri noted that he "reviewed [Petitioner's] history with him in relation to post vaccine left shoulder pain[.]" *Id.* Thus, this is the first time the term "SIRVA" was used to describe Petitioner's injury – though the date of onset is not included.

Also after initiating his claim, on July 27, 2021, Petitioner submitted a letter authored by Dr. Bottiglieri, dated July 23, 2021. Ex. 31. Dr. Bottiglieri wrote that during Petitioner's first visit with him on January 17, 2020, Petitioner "indicated that his pain began after he received a flu vaccine from his local pharmacy in the arm in question a couple of weeks earlier." *Id.* Dr. Bottiglieri also wrote that Petitioner "questioned if the vaccine could be the cause of his discomfort" at that time. *Id.* No other medical records related to the onset of Petitioner's left shoulder symptoms have been filed.

## III. Declaration Evidence

In his original declaration, Petitioner states that "[s]hortly following the flu vaccination, [he] developed left shoulder soreness and pain." Ex. 1 ¶ 5. "The day following [his] vaccination," he maintains, his pain "continued[,]" and "[w]ithin a few days" worsened, leading to shoulder stiffness. *Id.* Specifically, he had "noticeable left shoulder pain and soreness within a day of getting [his] flu shot," and he called his orthopedist's office within a few days to schedule an appointment. Ex. 27 ¶ 6. While waiting for an appointment, he used ice packs and Tylenol to treat his shoulder pain. *Id.*

Despite a contrary indication in the medical records, Petitioner maintains that he told Dr. Bottiglieri on January 17, 2020, that he had left shoulder pain "since receipt of the flu vaccination." Ex. 1 ¶ 6. And in response, Dr. Bottiglieri told Petitioner that he "believes vaccinations should be administered into the buttocks rather than shoulders." *See id.*; *see also* Ex. 27 ¶ 7.

In his supplemental declaration, drafted in 2024 and in response to my Order to Show Cause, Petitioner explains that during his first visit with Dr. Bottiglieri (on January 17, 2020), he "provided an estimate of when onset of [his] pain occurred and estimated three weeks even though [his] flu shot was given closer to two weeks before [his] appointment." Ex. 34 ¶ 9. He emphasizes it was a "rough estimate[,]" as was the estimate he gave during his first PT visit of onset in "early January." *Id.* ¶¶ 9-10. Additionally, Petitioner asserts that his "shoulder pain did not predate receiving [his] flu shot." *Id.* ¶¶ 9-10, 12.

Also following my Order to Show Cause, Petitioner's wife submitted a declaration wherein she states that when Petitioner "came home from getting his shot he told [her] that his shoulder was hurting[.]" Ex. 35 ¶ 6. She recalls that "[w]ithin a day of getting his shot, [she] had to help him put on his outer jacket because he could not move his left arm back to get it through the arm sleeve." *Id.* ¶ 9. She had to assist him putting on his coat "for the remainder of the winter." *Id.* ¶ 10. No other declaration evidence regarding the onset of Petitioner's pain has been submitted.

## IV. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[5] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

Section 11(c)(1) also contains requirements concerning the type of vaccination received and where it was administered, the duration or significance of the injury, and the lack of any other award or settlement. *See* Section 11(c)(1)(A), (B), (D), and (E). With regard to duration, a petitioner must establish that he suffered the residual effects or complications of such illness, disability, injury, or condition for more than six months after the administration of the vaccine. Section 11(c)(1)(D).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests *all* of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged

[5] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g*. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381 at 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs*., 110 Fed. Cl. 184, 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## V. Respondent's Objections and Findings of Fact

### A. Factual Findings Regarding QAI Criteria for Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has failed to establish one QAI requirement for a Table SIRVA. As a result, his Table claim cannot succeed.

#### 1. Prior Condition

The first QAI requirement for a Table SIRVA is lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent has not disputed that Petitioner can satisfy this Table criterion,[6] and without sufficient evidence to the contrary I find this requirement met.

[6] In arguing that Petitioner cannot establish Table-consistent onset, Respondent argues (in part) that Petitioner's contemporaneous medical records place the onset of his left shoulder pain as pre-dating the subject vaccination. Respondent's Response at 7 (internal citations omitted). He has not, however, explicitly raised a dispute concerning whether Petitioner had pre-existing shoulder pain that would explain his post-vaccination condition, but rather agrees that Petitioner was not under the care of a physician at the time of his receipt of the subject vaccination. *Id.* at 2.

**2. Onset of Pain**

A petitioner alleging a SIRVA claim must also show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that his pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). Respondent argues that the "only evidence that specifically places [P]etitioner's shoulder symptoms as beginning within the required timeframe lies in his and his spouse's declarations." Respondent's Response at 5.

Specifically, Respondent argues that the contemporaneous medical records show that for "almost an entire year," and over the course of approximately 20 medical visits, Petitioner sought treatment for his left shoulder *without attributing his symptoms to his vaccination*. Respondent's Response at 6-7 (internal citations omitted) (emphasis added). He thereafter provided "various estimates" of when his shoulder pain began, attributed such pain to other or "unknown" causes, and/or did not link his pain to the vaccination until the day before this claim's initiation. *Id.* Respondent thus argues that the declaration statements and treater letter filed in support of litigation (alleging immediate pain) "contradict" the contemporaneous medical records, and should be afforded "far less weight." *Id.* at 7-8. Further, Respondent asserts that Petitioner's suspicion that his pain stemmed from the use of the UBE likewise "refutes his [declaration] that he immediately suspected the flu vaccination." *Id.* at 9.

The specific issue of determining the onset of symptoms in a SIRVA case has arisen repeatedly. Important to that point, the Vaccine Act instructs that the special master may find the time period for the first symptom or manifestation of onset required for a Table Injury is satisfied "even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such a period." Section 13(b)(2). However, consistent with Petitioner's burden of proof overall, that finding must be supported by preponderant evidence. *Id*.

Here, despite Petitioner's declaration contentions, Petitioner's medical records do not provide *any* support for onset occurring within 48 hours of vaccination.[7] For instance, during Petitioner's first post-vaccination visit for left shoulder pain (on January 17, 2020), Dr. Bottiglieri recorded that Petitioner's pain began "INSIDIOUSLY week [sic] ago." Ex. 4 at 10. The parties reasonably dispute the meaning of this entry: whether it literally can be read as "*a*" week ago (as initially suggested in my Order to Show Cause), or "week*s*" ago – consistent with the x-ray note from the same day that states Petitioner had "left shoulder

[7] In fact, Petitioner himself acknowledged that "the medical records cannot pinpoint onset exactly on January 4-6, 2020," but urged that the declarations should carry his burden for a finding of Table-consistent onset. Reply at 3.

pain for 3 weeks" (Ex. 4 at 14).[8] But I do find it necessary to definitively resolve the meaning of this entry, because it does not support 48-hour onset regardless of its interpretation. Thus, if the notation is interpreted as onset occurring "a" week prior to this visit, that would place onset around January 10, 2020 (six days post vaccination). On the other hand, if it is interpreted as "weeks" ago, that would place onset around December 27, 2019 – pre-vaccination. Neither interpretation supports 48-hour onset. And, most notably, Petitioner did not link his left shoulder pain to the subject vaccination *at all* during this visit.

While Petitioner offered his own declarations and a letter from his treating orthopedist to overcome (in part) this missing link, such filings deserve little weight. For example, Dr. Bottiglieri's July 2021 letter describes Petitioner's January 17, 2020 visit and asserts that Petitioner reported pain beginning "after" a vaccination "a couple of weeks earlier," – thus fitting the timeline created by the ambiguousness in the medical record ("a couple of weeks," with the vaccination being 13 days prior). But the letter was crafted after the claim's initiation - and over a year-and-a-half after the original visit. *See generally* Ex. 31. More so, Petitioner's declarations maintaining that he told Dr. Bottiglieri of pain linked to the subject vaccine far earlier, but that this reference was not included in the actual record, do not make a compelling point. Ex. 1 ¶ 6; Ex. 27 ¶ 7. Not only were his declarations also drafted over a year after this visit and in pursuit of litigation, but Petitioner's statements contrast with the medical records. In fact, the visit notes from the January 2020 encounter reflect that Petitioner posited a potential cause of his pain *aside from the subject vaccination,* and that he explicitly "denie[d] trauma/injury." Ex. 4 at 10. It is unlikely that Dr. Bottiglieri would have recorded a purported origin of Petitioner's pain but without also noting Petitioner's link to the subject vaccination if it had been raised, as alleged.

More so, some of Petitioner's other contemporaneous medical records reflect an onset *before* his January 4, 2020 vaccination. *See,* e.g., Ex. 5 at 105 (a January 27, 2020 PT evaluation note reporting onset a "month ago" – or around December 27, 2019); Ex. 5 at 188 (a February 24, 2020 PT discharge note reflecting onset on "12/28/2019"). These consistent reports of the onset of Petitioner's pain beginning around December 27-28, 2019, (pre-vaccination) thus fail to provide support for 48-hour onset. Although I credit Petitioner's assertions in his declarations that such reports might reflect mere "estimates" of when his pain began, the reports nonetheless contradict a finding of post-vaccination onset. This is especially troublesome when more often than not in the Vaccine Program, petitioners who are successful in establishing Table onset estimate the beginning of their

[8] I am not persuaded by Petitioner's argument that the varying interpretation of this entry creates an inconsistency in the medical records. Petitioner's Br. at 14. Rather, consistent with his own acknowledgment, if the entry is interpreted to mean "weeks" ago – a reasonable interpretation put forth by Petitioner himself – that is consistent with the latter x-ray note describing onset three weeks earlier.

injury *at least* around the general timeframe of vaccination, often without proposing a time of onset that preceded the vaccine in question. *See,* e.g., *Callies v. Sec'y of Health & Hum. Servs.,* No. 22-301V, 2024 WL 5408181, at *3-4 (Fed. Cl. Spec. Mstr. Dec. 19, 2024) (finding a petitioner satisfied the Table onset requirement where, despite a delay in seeking care, she related the onset of her pain to the subject vaccination at her first visit for shoulder complaints and provided a general timeframe of onset "since" her receipt of the vaccine, including providing the correct month and year corresponding to the vaccine in question).

Relatedly, the argument that because Petitioner attended two visits around late December 2019 without mentioning issues in the vaccinated shoulder, his rough estimates on when his pain began (late December 2019), are consistent with a January 4, 2020 onset, and therefore merit weight, is not persuasive. *See,* e.g., Petitioner's Br. at 18-19. The mere absence of a complaint of symptoms in the left shoulder prior to vaccination, followed by post-vaccination reports of shoulder pain, is not sufficient to satisfy Petitioner's burden for Table-consistent onset here.

Most detrimental to Petitioner's Table onset claim is the fact that the medical records in which Petitioner first attributed his pain to his vaccination were from treatment obtained more than a year after vaccination – and *on the eve of the claim's initiation*. Ex. 26 at 10. Petitioner's January 6, 2021 complaint to his PCP of shoulder pain after a flu shot "in Jan[uary]" of the previous year is the *first* mention of a timeframe for the onset of Petitioner's left shoulder pain attributable to his vaccination in the medical records. Ex. 26 at 10. This report came at the tail end of his left shoulder treatment. Likewise, by the July 23, 2021 visit, when Petitioner's orthopedist first "reviewed" Petitioner's "history of SIRVA after flu vaccine" (Ex. 32 at 16), this claim had been pending for over six months. Still, it similarly does not place onset as beginning within 48 hours of the subject vaccination and thus does not advance Petitioner's argument with respect to Table onset.

Petitioner's contentions of immediate pain following his receipt of the subject flu vaccination in his declarations (Exs. 1, 27, 34) are ultimately inconsistent with his treatment course consisting of over 20 visits, mostly with his orthopedist, without once mentioning his January 2020 vaccination. Not only did Petitioner not offer his vaccination as a potential cause of his pain, but he wholly did also not even mention his prior receipt of a flu vaccine to any of his treaters throughout his treatment course. It indeed strains credulity to believe that then, one day prior to initiation of the instant claim and thereafter, Petitioner questioned to his treaters if his discomfort was a result of a flu vaccine, thus recalling the missing causal link even after previously asserting it was "unknown" or a result of the use of his UBE. Ex. 4 at 10; Ex. 5 at 105 (reverse order). Petitioner and his

treater's notations from 2021, more than a year after the original visit (and beyond), thus cannot overcome the contemporaneous records closest in time to vaccination.

Finally, as with Petitioner's declarations, I cannot find Petitioner's wife's declaration (describing immediate post-vaccination onset) overcomes the significant weight of the filed medical records in this case, as it was drafted in *direct* response to my Order to Show Cause. *See generally* Ex. 35. To the extent that the declaration describes Petitioner's pain and difficulties during the early winter of 2020, I will award it some weight, but I do not find it sufficient to carry Petitioner's burden for a showing of Table onset here.

In light of the above, there is not preponderant evidence that Petitioner experienced left shoulder pain within 48 hours of his January 4, 2020 flu vaccination.

### 3. Scope of Pain and Limited Range of Motion

The third QAI requirement for a Table SIRVA requires a petitioner's pain and reduced range of motion to be "limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii). Respondent has not contested this criterion and there is no evidence in the filed record to suggest it cannot be met.

### 4. Other Condition or Abnormality

The last QAI criteria for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent likewise has not disputed this criterion, and I do not find the record reveals sufficient evidence to find this requirement not met.

## Conclusion

At bottom, it is the overall mix of evidence herein that causes me to find Petitioner's Table claim cannot be preponderantly established. Petitioner has not provided preponderant evidence that the onset of his shoulder pain was within 48 hours of the subject vaccination. Nevertheless, a non-Table claim *could* be viable, and I therefore do not dismiss the case in its entirety at this time. I urge the parties to make one final brief attempt at settlement, since the case will otherwise be transferred out of SPU so that Petitioner can attempt to establish a causation-in-fact claim – likely requiring the retention of experts to amplify Petitioner's claim.

Accordingly, Petitioner's Table SIRVA claim is **DISMISSED.** Petitioner shall file a joint status report indicating that he has provided Respondent with a revised settlement

demand for his off-Table claim (and one that takes into account litigative risk in attempting to prove a non-Table SIRVA that did not begin within two days of the subject vaccination), and the parties' efforts towards informal resolution, **by no later than Wednesday, August 6, 2025.** If the parties do not report progress in their efforts soon thereafter, the matter will be transferred out of SPU.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master